# UNITED STATES DISTRICT COURT
for the
District of Colorado

In the Matter of the Search of )
Apple ID: "bigtiiimer@icloud.com" more fully ) Case No. 25-sw-40-NRN
described in Attachment A, attached hereto. )
)
)
)
)

**APPLICATION FOR A SEARCH WARRANT**

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

**SEE "ATTACHMENT A"**, which is attached to and incorporated in this Application and Affidavit
located in the ___State and___ District of ___Colorado___, there is now concealed *(identify the person or describe the property to be seized)*:

**SEE "ATTACHMENT B"**, which is attached to and incorporated in this Application and Affidavit

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☒ evidence of a crime;
☐ contraband, fruits of crime, or other items illegally possessed;
☐ property designed for use, intended for use, or used in committing a crime.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 924(c)(1)(A)(i) | Possession of a Firearm in Furtherance of a Drug Trafficking Crime |
| 21 U.S.C. § 841(a)(1) | Possession with Intent to Distribute a Controlled Substance |

The application is based on these facts:
X Continued on the attached affidavit, which is incorporated by reference.

*s/Sam Thompson*
*Applicant's signature*

Sam Thompson, Special Agent, ATF
*Printed name and title*

Sworn to before me and: ☒ submitted, attested to, and acknowledged by reliable electronic means.

Date: 01/14/2025

*Judge's signature*

City and state: Denver, CO

Magistrate Judge N. Reid Neureiter
*Printed name and title*

## ATTACHMENT A

### DESCRIPTION OF LOCATION TO BE SEARCHED

This warrant applies to information associated with Apple ID: "bigtiiimer@icloud.com," also referred to as the "SUBJECT ACCOUNT," that is stored at premises owned, maintained, controlled, or operated by Apple Inc., a company headquartered at One Apple Park Way, Cupertino, California.

## DESCRIPTION OF ITEMS TO BE SEIZED AND SEARCHED

For the SUBJECT ACCOUNT listed and described in Attachment A, the following items, which constitute evidence of the commission of violations of Title 18, United States Code, Section 924(c), and Title 21, United States Code, Section 841(a)(1) (the "Subject Offenses") from October 1, 2022 (UTC 0000 hours), through March 21, 2024 (UTC 2359 hours):

- All subscriber information, such as names, phone numbers, addresses, alternative email addresses, driver's license number, SSN, and any other personal identifiers;
- Device Information for all devices associated with the account including device make and model(s), device serial number(s), and/or other device identifying information such as ESN, ICCID, IMSI, IMEI, MAC Address, and Advertising ID numbers;
- The contents of all emails associated with the account, including stored or preserved copies of emails sent to and from the account (including all draft emails and deleted emails), the source and destination addresses associated with each email, the date and time at which each email was sent, the size and length of each email, and the true and accurate header information including the actual IP addresses and Port IDs of the sender and the recipient of the emails, and all attachments;
- The contents of all instant messages associated with the account, including stored or preserved copies of instant messages (including iMessages, SMS messages, and MMS messages) sent to and from the account (including all draft and deleted messages), the source and destination account or phone number associated with each instant message, the date and time at which each instant message was sent, the size and length of each instant message, the actual IP addresses of the sender and the recipient of each instant message, and the media, if any, attached to each instant message;
- All iCloud data associated with any backups of iPhones associated with this account, including all iTunes backups associated with those devices and the SUBJECT ACCOUNT;
- Details for all stored contacts including names, addresses, dates of birth, email addresses, phone numbers and any other collected information regarding the listed contacts;
- Login IP addresses with Port IDs for all logins to the SUBJECT ACCOUNT;
- All records and information regarding locations where the account was accessed, including all data stored in connection with Location Services;
- Contents of all files, including photographs and videos, stored in iCloud or other server or Apple facilitated format including all iOS device backups, all Apple and third-party app data, all files and other records related to iCloud Mail, iCloud Photo Sharing, My Photo Stream, iCloud Photo Library, iCloud Drive, iWorks (including Pages, Numbers, and Keynote), iCloud Tabs, and iCloud Keychain, and all address books, contact and buddy lists, notes, reminders, calendar entries, images, videos, voicemails, device settings, and bookmarks;
- Data related to user interactions with AppleCare related to any/all device(s) associated with the identified SUBJECT ACCOUNT;
- Transaction requests to remotely lock or erase devices and/or data therein;

- All records pertaining to the types of service used and records of any communications between the account holder and Apple or between Apple and anyone else with regard to the SUBJECT ACCOUNT;
- Records of games, videos, or other remotely accessible data and the associated IP address with Port IDs from which the remote access was made;
- All files, keys, or other information necessary to decrypt any data produced in an encrypted form, when available to Apple (including the keybag.txt and fileinfolist.txt files).

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

I, Special Agent Sam Thompson, being duly sworn, depose and state that the following is true to the best of my information, knowledge, and belief:

### INTRODUCTION AND AGENT BACKGROUND

1. Your affiant, Sam Thompson, is a Special Agent with the United States Department of Justice, Bureau of Alcohol, Tobacco, Firearms & Explosives (ATF), and has been so employed since August 2022. Your affiant is an investigative or law enforcement officer of the United States, within the meaning of Title 18, United States Code, Section 2510(7), that is an officer of the United States empowered by law to conduct investigations of, and to make arrests for, offenses enumerated by statute in the United States Code, and the Colorado Revised Statutes. Your affiant is authorized under the Federal Rules of Criminal Procedure, Rule 41(a)(2)(C) as a federal law enforcement officer who is engaged in enforcing the criminal laws and is within any category of officers authorized by the Attorney General to request a search warrant.

2. Your affiant is a graduate of the Federal Law Enforcement Training Center where your affiant received 12 weeks of training as part of the Criminal Investigator Training Program in 2022. Your affiant is also a graduate of the ATF Special Agent Basic Training course where your affiant received 15 weeks of training in 2023. This training includes, but is not limited to the following: recognition, identification, and functionality of firearms and ammunition, federal firearms laws, federal arson and explosives laws, federal drug laws, cellular device exploitation, undercover operations, search warrant operations, case management, and basic federal investigations.

3. Prior to your affiant's tenure as a Special Agent, your affiant received formal training for law enforcement in both a general and specific nature as it relates to criminal investigation, the understanding of criminal prosecution, and enforcement of state and federal laws. Your affiant has also been employed in the field of law enforcement since 2013 where your affiant obtained experience in criminal investigations, court procedures, identifying violent crime trends, evidence collection and handling, and identifying illegal narcotics. During your affiant's time as a criminal investigator, your affiant has investigated crimes to include armed robbery, accidental overdose deaths, suicidal deaths, homicides, kidnappings, narcotics investigations, attempted murder, car jackings, federal firearms violations and violent home invasions. Your affiant has seized firearms, quantities of illegal narcotics, digital evidence, forensic evidence, and other evidence as it related to criminal investigations.

4. Your affiant is currently assigned to the Regional Anti-Violence Enforcement Network, Violent Crime Task Force (RAVEN). This assignment involves investigating violations of firearms laws, controlled substance, tobacco, explosives, and arson laws. As a Special Agent, your affiant is authorized to investigate violations of laws of the United States and to execute warrants issued under the authority of the United States. Your affiant is

familiar with and has received training regarding the enforcement of federal laws concerning firearms and narcotics laws. During your affiant's law enforcement career, your affiant has authored search warrants, production of records requests, and requested court orders for all manner of evidence, including but not limited to, real property, vehicles, persons, electronic information, website information, cellular phone information, and biological evidence. Your affiant has consulted with Senior Special Agents in the ATF, who have years of experience in working firearms and narcotics cases.

5. The information provided in this Affidavit is based on your affiant's personal knowledge and observations, as well as information your affiant has received from other law enforcement officers. Because this affidavit is being submitted for the limited purpose of obtaining judicial authorization for the issuance of a search warrant, each and every fact known concerning this investigation has not been included. Your affiant has set forth only those facts that your affiant believe are necessary to establish probable cause for an application authorizing a search warrant for the Apple Account of bigtiiimer@icloud.com, hereafter referred to as the "SUBJECT ACCOUNT." Your affiant has not knowingly or intentionally omitted any information that would tend to undermine probable cause.

## JURISDICTION

6. This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(a), (b)(1)(A), & (c)(1)(A). Specifically, the Court is "a district court of the United States . . . that has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

## PURPOSE OF THIS AFFIDAVIT

7. Your Affiant makes this affidavit in support of an application for a search warrant to search Apple records related to the SUBJECT ACCOUNT. Attachment A identifies this the SUBJECT ACCOUNT. Attachment B identifies with particularity the evidence your Affiant seeks permission to search for and seize. The evidence sought is stored at premises owned, maintained, controlled, or operated by Apple Inc., a company headquartered at One Apple Park Way, Cupertino, California.

8. The applied-for warrant would authorize the forensic examination of the data returned from Apple for the SUBJECT ACCOUNT identified in Attachment A for the purpose of identifying electronically stored data particularly described in Attachment B. Based on the information below, there is probable cause to believe the SUBJECT ACCOUNT described in Attachment A contains the items described in Attachment B. As set forth

below, there is probable cause to believe that the SUBJECT ACCOUNT contains evidence of one or more of the following violations of federal law:

a. Possession of a Firearm in Furtherance of a Drug Trafficking Crime, 18 U.S.C. § 924(c);
b. Distribution of a Controlled Substance, 21 U.S.C., § 841(a)(1).

## PROBABLE CAUSE

9. On March 21, 2024, at approximately 1:45 p.m., Denver Police ("DPD") Officers Russell and Grenfell, who are assigned to the District 1 Narcotics Unit, observed a gold BMW X5 in the area of the 800 block of N. Inca Street. Officers noted that the vehicle did not have a properly affixed license plate on the front of the vehicle, but were able to determine that the vehicle displayed CO license plate "DYNQ09" on the rear of the vehicle. Officers queried the vehicle and found that there were two Attempt to Locate notices ("ATL") on this vehicle for two separate cases (DPD 24-129936, DPD 24-5000904) for eluding. The ATL notice advised that the vehicle should be impounded upon contact for further investigation.

10. Officers Russell and Grenfell decided to wait until the vehicle came to a stop before making contact due to the vehicle previously fleeing from other attempts to stop it. Officers drove around the area until they located the vehicle stopped near the intersection of W 8th Avenue and N Inca Street. Officer Russell and Grenfell stopped their vehicle at the rear of the BMW and approached on foot, noting as they approached that the vehicle was occupied by a front seat passenger (later identified as a juvenile, D.H.) and a rear left seat passenger (later identified as Christian HERRERA).

11. As they approached the vehicle, Officer Grenfell observed Christian HERRERA roll up the back window and Officer Russell observed D.H. make furtive movements towards the floorboard of the front passenger seat. Due to the vehicle needing to be impounded in accordance with the "ATL" investigative hold, officers immediately opened the vehicle doors to make contact with the occupants. As officers did this, Officer Grenfell called out that he observed two firearms in the rear seat of the vehicle near Christian. Officer Grenfell attempted to detain Christian HERRERA, who immediately began to resist detention. At the same time, Officer Russell attempted to detain D.H., who resisted and began to reach towards his waist band. Officer Russell forced D.H. into handcuffs and moved him to the nearby sidewalk before placing him on the ground. After a short time, Officer Grenfell was able to place Christian HERRERA into handcuffs as well.

12. Your affiant reviewed body worn camera footage and photos taken by police, from the arrest of Christian HERRERA and notes that the firearms observed by Officer Grenfell were directly next to Christian HERRERA, within easy reach of his position (see photo below).



*Figure 1: Photo of firearms placement in comparison with Christian HERRERA's location (rear driver side seat) at the time of police contact.*

13. Officer Russell noted in his report that as he was detaining D.H., he conducted a pat down of D.H.'s person in order to determine if he had any weapons on his person. Officer Russell felt a shoulder bag underneath D.H.'s shirt which he believed may have contained a weapon due to the popularity of these bags with firearms users. During a search of this bag, Officer Russell observed a plastic bag with numerous individually prepackaged baggies containing what Officer Russell believed to be cocaine. Your affiant notes that this substance was later tested by the Denver Crime lab and determined to be 4.509 gross grams of cocaine. Additionally, $211.00 of U.S. Currency was located inside this black shoulder bag.

14. After detaining Christian, Officer Grenfell began an inventory of the gold BMW pursuant to the investigative hold. Officer Grenfell located the following items of interest:
    a. A tan Glock model 19, 9mm semi-automatic handgun bearing serial number BXRT367, which was located in the center of the back seat where Christian HERRERA had been sitting. The firearm was found with no cartridges in the chamber, and five live 9mm cartridges in the seated extended magazine.

    b. A black Glock model 30, .45 caliber, semi-automatic handgun bearing serial number BYAN126, located in a black shoulder bag, "fanny pack," in the center of the back seat where Christian HERRERA had been sitting. The firearm was found with no cartridge in the chamber, and one live .45 caliber cartridge in the seated extended magazine. This firearm serial number was run through NCIC and was listed as stolen as of October 10, 2022, when it was reported stolen to the Denver Police Department.

    c. A black Glock model 19, 9mm, semi-automatic handgun bearing serial number AHAG539, located on the front passenger seat floorboard where D.H. had been sitting. The firearm was found with no cartridge in the chamber, and seventeen live 9mm cartridges in the seated extended magazine.

    d. One live .223 caliber cartridge casing located on the right rear passenger floorboard.

    e. One live. 40 caliber cartridge found the rear passenger cupholder which folds out of the seat

    f. One empty .45 caliber Glock magazine located under the black "fanny pack" in which the Glock model 30 had been located.

    g. Several torn plastic baggies that were tied off in a manner which indicated they were used for packaging narcotics, located in the black "fanny pack" in the center of the back seat.

    h. One bag of suspect cocaine located in the rear left passenger seat, where Christian HERRERA had been sitting before he was removed from the vehicle.

    i. One credit card for "Claudia Ceniceros" located on the rear left passenger seat, where Christian HERRERA had been sitting before, he was removed from the vehicle. DPD officers believe that Claudia is the mother of D.H. and Christian HERRERA.

15. Following this inventory search of the vehicle, Christian HERRERA was searched, and officers found suspected cocaine (packaged in individual baggies matching the baggies that D.H. had in his bag) in Christian HERRERA's pants pocket. Christian HERRERA also had $350.00 in U.S. Currency in his pants pocket. The suspected cocaine was eventually sent to the Denver Crime lab and the combined weight of what was found in his pocket, along with the bag found on his seat, was determined to be 14.301 gross grams of cocaine.

16. Christian HERRERA was arrested by the Denver Police Department for PCS W/Intent to distribute – Cocaine; Special Offender- Firearm; and Resisting arrest.

17. All recovered firearms were test-fired by the Denver Crime Laboratory so that the shell casings could be entered into the National Integrated Ballistic Information Network (NIBIN). The test fire of these three firearms by the Denver Crime Laboratory shows that all three firearms functioned as designed and fit the definition of a firearm under Title 18 U.S.C. § 921(a)(3): any weapon which will, or is designed to, or may be readily converted to expel a projectile by the action of an explosion.

18. In summary, D.H. and Christian HERRERA were contacted by Denver Police officers who were attempting to interdict the vehicle they were in. At the time of the contact, both D.H. and Christian HERRERA were in possession of cocaine and firearms. The weight of cocaine that D.H. was in possession of was determined by the Denver Crime Lab to be 4.509 gross grams, while the weight of cocaine that Christian was in possession of was determined by the Denver Crime Lab to be 14.301 gross grams. The cocaine possessed by both Christian and D.H. was separated into small, pre-packaged baggies. Police recovered a firearm and several plastic baggies tied off for narcotics packaging in a black "fanny pack" which was on the seat next to HERRERA at the time of his arrest. Your affiant knows from training and experience that packaging drugs in this way would allow a drug dealer to conduct quick "hand to hand" sales for that amount of cocaine. Your affiant also knows that drug dealers often arm themselves with firearms to protect themselves and their product from robberies which are common during street level drug dealing. In this instance, both Christian HERRERA and D.H. had firearms within reaching distance of themselves while possessing cocaine which was pre-packaged for sale. Additionally, Christian HERRERA had $350 in his pants pocket, in close proximity to the narcotics and firearms.

19. On September 10, 2024, The Honorable Michael E. Hegarty, Chief United States Magistrate Judge for the District of Colorado, reviewed a search warrant prepared by your affiant related to a silver iPhone seized from Christian HERRERA at the time of his arrest. A search warrant was issued for this device, and was executed on September 16, 2024, by ATF Task Force Officers Garcia, and Perez. Your affiant knows from training and experience that Apple Devices, and specifically iPhones, have many security features built into the software of the device. One of those security features is related to the "first unlock" of a device after it has been powered off. If an iPhone is unlocked after restart, the digital forensic tools used by law enforcement allow for an almost full download of the phone by bypassing the passcode security feature. However, if a phone has not been unlocked after a restart, the digital forensic tools are unable to bypass the passcode and can only get a partial "scrape" of the data on the phone. From your affiant's experience, this data is usually specific to the device's identification, some photographs, and a very limited amount of social media chats which were loaded onto the device. In this instance, HERRERA's phone had been powered off before your affiant was able to extract the data pursuant to a search warrant, therefore, Task Force Officers were unable to obtain a full download of the phone due to the "first unlock" security features of the phone. Your affiant knows that iCloud can act as a backup feature for an iPhone, and often contains much of the data from the phone. Your affiant believes that accessing this iCloud data would allow investigators to obtain data that the forensic tools were unable to extract from the phone.

20. ATF Task Force Officer Perez and your affiant conducted a review of the partial data obtained pursuant to that search warrant and learned that the iPhone was linked to the Apple ID: "bigtiiimer@icloud.com" also known as the SUBJECT ACCOUNT. Additionally, your affiant learned that Device serial number was F2LFFD0W0D3Y, and the IMEI number of the device is 351732279187655.

21. On October 2, 2024, your affiant completed a review of the data related to the phone seized from HERRERA. During a review of this data, your affiant found numerous

photographs related to firearms, firearms trafficking, and drug trafficking. Your affiant also found photographs of digital financial transactions which your affiant believes could be related to drug trafficking activity. However, the context of these photographs is very limited due to nature of a partial digital extraction of an iPhone. Your affiant believes that the Apple iCloud account will contain more information directly related to this investigation to include patterns of drug trafficking activity, sources of supply for both illegal narcotics as well as illegal firearms, and possible co-conspirators.

22. As described above, your affiant knows from training and experience that the cocaine located inside of HERRERA's pants pocket was not for personal use based on multiple facts, such as the amount seized, along with the way the cocaine was separated into numerous small, pre-packaged baggies, as well as the cash. This indicates that HERRERA and D.H. were both engaged in narcotics trafficking. Your affiant knows from training and experience, this investigation, and from other, unrelated investigations, that those engaged in narcotics trafficking will use cellular telephones to communicate with their source(s) of supply, co-conspirators, and customers. The partial download of HERRERA's phone detailed above is consistent with such use. These communications are done in text messaging, through social media, and email. It is common for narcotics traffickers to send photos and/or videos of product to customers or to receive the same from source(s) of supply prior to the actual drug transaction. Social media is frequently used to advertise narcotics sales, as well as to obtain narcotics and firearms. Videos and photos are shared on social media to do this. The Internet is also a common resource for narcotics sales, as those engaged in drug trafficking will research various narcotics, prices, locations, and tools of drug trafficking. GPS is commonly used to obtain locations to meet in order to conduct a drug transaction or to obtain firearms. Additionally, calculators, data files, letters, notes, spreadsheets, documents, and memorandums are frequently used by drug dealers to calculate and record drug transactions in the form of a ledger. These forms of documentation are used to record drug quantities, drug prices, and customers' names. Finally, drug distribution tends to be a cash business, so financial information saved to the SUBJECT ACCOUNT will further provide evidence of HERRERA's drug trafficking activities, as well as his possession of firearms in furtherance of such activities.

23. Additionally, your Affiant knows from training and experience that those who illegally possess firearms will often use social media, text messages, and email to communicate with others in order to send photos/videos of the firearm as well as to buy and sell firearms illegally. HERRERA was in possession of a Glock model 30, semi-automatic handgun, bearing serial number BYAN126, which had been stolen on October 10, 2022. He was also in possession of another Glock firearm, both handguns loaded with extended magazines. Because he could not legally acquire a stolen firearm, the SUBJECT ACCOUNT is likely to contain evidence as to how he acquired the firearms seized by law enforcement. These communications are commonly found in text messaging, social media applications, and email. Your Affiant knows from training and experience that photos/videos of firearms commonly are exchanged so the purchaser of the firearm sees the gun prior to purchase. Internet or social media searches are also commonly done to research a particular type of firearm. GPS data also will show where a firearm transaction

occurred. And those who arm themselves while distributing narcotics frequently inform others that they are armed, in order to proactively prevent a robbery from taking place. Your Affiant knows that such information is broadcast over social media messages/posts, as well as text messages or even email. All of this evidence is likely to be on the SUBJECT ACCOUNT.

24. The date range of October 1, 2022, through March 21, 2024, is requested because the black Glock model 30 firearm that was next to Christian HERRERA was reported stolen on October 1, 2022, by Adeline Herrera. It is unknown at this time if Adeline Herrera is related to Christian HERRERA or D.H. Further, the two Glock model 19 firearms recovered by officers were purchased at the end of October 2022 by someone other than Christian HERRERA or D.H. This same individual purchased six firearms at that time, and four of those firearms have been recovered by law enforcement, including the two Glock model 19 firearms in this case. This time frame is requested to search for evidence as to how these firearms were obtained, whether Christian HERRERA was involved in stealing the Glock model 30 firearm or not, and who is providing the firearms that are unlawfully possessed in furtherance of drug trafficking. Additionally, drug trafficking is a business that involves both sources of supply and customers. In your affiant's training and experience, those engaged in drug trafficking typically build a business over a period of months and years, not days. Trust must be built in order to obtain narcotics and to sell narcotics to most customers. More than one source of supply can be located and obtained, as well as changed as the business grows or develops. There is reason to believe that the requested date range will provide information as to who Christian HERRERA obtains narcotics from as well as how he is paying for these narcotics (and firearms), and his customer base, information that dates back longer than the date of his arrest due to the nature of the activity.

## BACKGROUND CONCERNING APPLE

25. Apple is a United States company that produces the iPhone, iPad, and iPod Touch, all of which use the iOS operating system, and desktop and laptop computers based on the Mac OS operating system.

26. Apple provides a variety of services that can be accessed from Apple devices or, in some cases, other devices via web browsers or mobile and desktop applications ("apps"). As described in further detail below, the services include email, instant messaging, and file storage:
    a. Apple provides email service to its users through email addresses at the domain names mac.com, me.com, and icloud.com.
    b. iMessage and FaceTime allow users of Apple devices to communicate in real-time. iMessage enables users of Apple devices to exchange instant messages ("iMessages") containing text, photos, videos, locations, and contacts, while FaceTime enables those users to conduct audio and video calls.

    c.  iCloud is a cloud storage and cloud computing service from Apple that allows its users to interact with Apple's servers to utilize iCloud-connected services to create, store, access, share, and synchronize data on Apple devices or via icloud.com on any Internet-connected device.  For example, iCloud Mail enables a user to access Apple-provided email accounts on multiple Apple devices and on iCloud.com.  iCloud Photo Library and My Photo Stream can be used to store and manage images and videos taken from Apple devices, and iCloud Photo Sharing allows the user to share those images and videos with other Apple subscribers.  iCloud Drive can be used to store presentations, spreadsheets, and other documents.  iCloud Tabs and bookmarks enable iCloud to be used to synchronize bookmarks and webpages opened in the Safari web browsers on all of the user's Apple devices.  iCloud Backup allows users to create a backup of their device data.  iWork Apps, a suite of productivity apps (Pages, Numbers, Keynote, and Notes), enables iCloud to be used to create, store, and share documents, spreadsheets, and presentations.  iCloud Keychain enables a user to keep website username and passwords, credit card information, and Wi-Fi network information synchronized across multiple Apple devices.

    d.  Game Center, Apple's social gaming network, allows users of Apple devices to play and share games with each other.

    e.  Find My iPhone allows owners of Apple devices to remotely identify and track the location of, display a message on, and wipe the contents of those devices.  Find My Friends allows owners of Apple devices to share locations.

    f.  Location Services allows apps and websites to use information from cellular, Wi-Fi, Global Positioning System ("GPS") networks, and Bluetooth, to determine a user's approximate location.

    g.  App Store and iTunes Store are used to purchase and download digital content.  iOS apps can be purchased and downloaded through App Store on iOS devices, or through iTunes Store on desktop and laptop computers running either Microsoft Windows or Mac OS.  Additional digital content, including music, movies, and television shows, can be purchased through iTunes Store on iOS devices and on desktop and laptop computers running either Microsoft Windows or Mac OS.

27. Apple services are accessed through the use of an "Apple ID," an account created during the setup of an Apple device or through the iTunes or iCloud services.  The account identifier for an Apple ID is an email address, provided by the user.  Users can submit an Apple-provided email address (often ending in @icloud.com, @me.com, or @mac.com) or an email address associated with a third-party email provider (such as Gmail, Yahoo, or Hotmail).  The Apple ID can be used to access most Apple services (including iCloud, iMessage, and FaceTime) only after the user accesses and responds to a "verification email" sent by Apple to that "primary" email address.  Additional email addresses ("alternate," "rescue," and "notification" email addresses) can also be associated with an Apple ID by the user.  A single Apple ID can be linked to multiple Apple services and devices, serving as a central authentication and syncing mechanism.

28. Apple captures information associated with the creation and use of an Apple ID.  During the creation of an Apple ID, the user must provide basic personal information including the user's full name, physical address, and telephone numbers.  The user may also provide means of payment for products offered by Apple.  The subscriber information and password associated with an Apple ID can be changed by the user through the "My

Apple ID" and "iForgot" pages on Apple's website.  In addition, Apple captures the date on which the account was created, the length of service, records of log-in times and durations, the types of service utilized, the status of the account (including whether the account is inactive or closed), the methods used to connect to and utilize the account, the Internet Protocol address ("IP address") used to register and access the account, and other log files that reflect usage of the account.

29. Additional information is captured by Apple in connection with the use of an Apple ID to access certain services.  For example, Apple maintains connection logs with IP addresses that reflect a user's sign-on activity for Apple services such as iTunes Store and App Store, iCloud, Game Center, and the My Apple ID and iForgot pages on Apple's website.  Apple also maintains records reflecting a user's app purchases from App Store and iTunes Store, "call invitation logs" for FaceTime calls, "query logs" for iMessage, and "mail logs" for activity over an Apple-provided email account.  Records relating to the use of the Find My iPhone service, including connection logs and requests to remotely lock or erase a device, are also maintained by Apple.

30. Apple also maintains information about the devices associated with an Apple ID.  When a user activates or upgrades an iOS device, Apple captures and retains the user's IP address and identifiers such as the Integrated Circuit Card ID number ("ICCID"), which is the serial number of the device's SIM card.  Similarly, the telephone number of a user's iPhone is linked to an Apple ID when the user signs into FaceTime or iMessage.  Apple also may maintain records of other device identifiers, including the Media Access Control address ("MAC address"), the unique device identifier ("UDID"), and the serial number.  In addition, information about a user's computer is captured when iTunes is used on that computer to play content associated with an Apple ID, and information about a user's web browser may be captured when used to access services through icloud.com and apple.com.  Apple also retains records related to communications between users and Apple customer service, including communications regarding a particular Apple device or service, and the repair history for a device.

31. Apple provides users with five gigabytes of free electronic space on iCloud, and users can purchase additional storage space.  That storage space, located on servers controlled by Apple, may contain data associated with the use of iCloud-connected services, including: email (iCloud Mail); images and videos (iCloud Photo Library, My Photo Stream, and iCloud Photo Sharing); documents, spreadsheets, presentations, and other files (iWork and iCloud Drive); and web browser settings and Wi-Fi network information (iCloud Tabs and iCloud Keychain).  iCloud can also be used to store iOS device backups, which can contain a user's photos and videos, iMessages, Short Message Service ("SMS") and Multimedia Messaging Service ("MMS") messages, voicemail messages, call history, contacts, calendar events, reminders, notes, app data and settings, Apple Watch backups, and other data.  Records and data associated with third-party apps may also be stored on iCloud; for example, the iOS app for WhatsApp, an instant messaging service, can be configured to regularly back up a user's instant messages on iCloud Drive.  Some of this data is stored on Apple's servers in an encrypted form but can nonetheless be decrypted by Apple.

32. This investigation is related to drug trafficking and possessing weapons in furtherance of drug trafficking. In your affiant's training and experience, evidence of who was using an Apple ID and from where, and evidence related to criminal activity of the kind described above, may be found in the files and records described above. This evidence may establish the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or, alternatively, to exclude the innocent from further suspicion.

33. As will be noted previously in this affidavit, a review of HERRERA's iPhone extraction showed your affiant that he was taking photographs of illegal narcotics and financial transactions consistent with small purchases of illegal narcotics. Your affiant was unable to retrieve any messages related to drug trafficking but knows through training and experience that messages related to criminal activity may be stored on an Apple Account. For example, the stored communications and files connected to an Apple ID may provide direct evidence of the offenses under investigation. Based on your affiant's training and experience, instant messages, emails, voicemails, photos, videos, and documents are often created and used in furtherance of criminal activity, including to communicate and facilitate the offenses under investigation.

34. While HERRERA was in direct control of the device connected to the SUBJECT ACCOUNT, your affiant knows that possession does not necessarily mean that the phone belongs to HERRERA. Your affiant knows that Apple Account's will have information related which may indicate who was the primary user of the account. In addition, the user's account activity, logs, stored electronic communications, and other data retained by Apple can indicate who has used or controlled the account. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, subscriber information, email and messaging logs, documents, and photos and videos (and the data associated with the foregoing, such as geo-location, date and time) may be evidence of who used or controlled the account at a relevant time. As an example, because every device has unique hardware and software identifiers, and because every device that connects to the Internet must use an IP address, IP address and device identifier information can help to identify which computers or other devices were used to access the account. Such information also allows investigators to understand the geographic and chronological context of access, use, and events relating to the crime under investigation.

35. Account activity may also provide relevant insight into the account owner's state of mind as it relates to the offenses under investigation. For example, information on the account may indicate the owner's motive and intent to commit a crime (e.g., information indicating a plan to commit a crime), or consciousness of guilt (e.g., deleting account information in an effort to conceal evidence from law enforcement).

36. As noted previously in this affidavit, your affiant discovered approximately 20 photographs related to small electronic transactions which your affiant believes could be related to drug trafficking. However, due to the nature of the partial extraction of the iPhone, your affiant has no context in which to confirm that these transactions are related directly to drug trafficking. Other information connected to an Apple ID may lead to the discovery of additional evidence. For example, the identification of apps downloaded

from App Store and iTunes Store may reveal services used in furtherance of the crimes under investigation or services used to communicate with co-conspirators. In addition, emails, instant messages, Internet activity, documents, and contact and calendar information can lead to the identification of co-conspirators and instrumentalities of the crimes under investigation.

37. Therefore, Apple's servers are likely to contain stored electronic communications and information concerning subscribers and their use of Apple's services. In your affiant's training and experience, such information may constitute evidence of the crimes under investigation including information that can be used to identify the account's user or users.

38. *Need to review evidence over time and to maintain entirety of evidence.* Your Affiant recognizes the prudence requisite in reviewing and preserving in its original form only such records applicable to the violations of law described in this Affidavit and in Attachment B in order to prevent unnecessary invasion of privacy and overbroad searches. Your Affiant advises it would be impractical and infeasible for the Government to review the digital data that is copied as a result of a search warrant issued pursuant to this Application during a single analysis. Your Affiant has learned through practical experience that various pieces of evidence retrieved from digital services in investigations of this sort often have unknown probative value and linkage to other pieces of evidence in the investigation until they are considered within the fluid, active, and ongoing investigation of the whole as it develops. In other words, the weight of each individual piece of the data fluctuates based upon additional investigative measures undertaken, other documents under review and incorporation of evidence into a consolidated whole. Analysis is content-relational, and the importance of any associated data may grow whenever further analysis is performed. The full scope and meaning of the whole of the data is lost if each piece is observed individually, and not in sum. Due to the interrelation and correlation between pieces of an investigation as that investigation continues, looking at one piece of information may lose its full evidentiary value if it is related to another piece of information, yet its complement is not preserved along with the original. In the past, your Affiant has reviewed activity and data pursuant to search warrants in the course of ongoing criminal investigations. Your Affiant has learned from that experience, as well as other investigative efforts, that multiple reviews of the data at different times is necessary to understand the full value of the information contained therein, and to determine whether it is within the scope of the items sought in Attachment B. In order to obtain the full picture and meaning of the data from the information sought in Attachments A and B of this application, the Government would need to maintain access to all of the resultant data, as the completeness and potential of probative value of the data must be assessed within the full scope of the investigation. As such, your Affiant respectfully requests the ability to maintain the whole of the data obtained as a result of the search warrant, and to maintain and to review the data in the control and custody of the Government and law enforcement at times deemed necessary during the investigation, rather than minimize the content to certain communications deemed important at one

time. As with all evidence, the Government will maintain the evidence and mirror images of the evidence in its custody and control, without alteration, amendment, or access by persons unrelated to the investigation.

## CONCLUSION AND REQUEST

43. Based on the forgoing, I request that the Court issue the proposed search warrant. Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant. The government will execute this warrant by serving the warrant on Apple. Because the warrant will be served on Apple, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

44. Based on the information contained in this affidavit, it is your Affiant's belief that there is probable cause to believe that contained within the SUBJECT ACCOUNT, described in Attachment A, there exists evidence, fruits, and instrumentalities, as described in Attachment B, of Title 18 U.S.C. § 924(c)(1)(A)(i) – Possession of a Firearm in Furtherance of a Drug Trafficking Crime; and Title 21 U.S.C. 841(a)(1) – Possession with Intent to Distribute a Controlled Substance.

45. Therefore, your Affiant respectfully requests that this court issue a Search Warrant for the SUBJECT ACCOUNT described more fully in Attachment A, to search for the items described in Attachment B.

I, Sam Thompson, being duly sworn, depose and states under penalty of perjury that the facts stated in the foregoing affidavit are true and correct to the best of my knowledge, information, and belief.

*s/Sam Thompson*
Sam Thompson, Special Agent
ATF

Submitted, sworn to, and acknowledged by reliable electronic means on ____01/14/2025____

_N. Reid Neureiter_
The Honorable N. Reid Neureiter
United States Magistrate Judge
District of Colorado

**Application for search warrant was reviewed and is submitted by Celeste Rangel, Assistant United States Attorney.**